UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Adv. No. 11-01994

LIBERTY MUTUAL INSURANCE COMPANY,    (Consolidated with Pros. Nos. 10-03653-BKC-JKO,

    Plaintiff,    10-03627-BKC-JKO, 10-03720-BKC-JKO,

vs.    10-03626-BKC-JKO, and 10-03610-BKC-JKO)

UNITED STATES OF AMERICA, ROBERT FURR,
JOEL TABAS and SONEET KAPILA,

    Defendants.
_____/

### LIBERTY MUTUAL INSURANCE COMPANY'S OPPOSITION TO MIAMI CENTER LIMITED PARTNERSHIP'S MOTION TO INTERVENE (DOC. 26)

Liberty Mutual Insurance Company ("Liberty"), by and through its undersigned counsel, opposes the Motion to Intervene filed by Miami Center Limited Partnership ("MCLP") (Doc. 26), on the grounds that MCLP lacks standing to intervene; MCLP's interests are adequately represented by the Chapter 7 Trustee for the Driscoll Estate and the United States, who are already parties to this action; and MCLP's Motion to Intervene is untimely and unduly prejudicial to the parties:

#### SUMMARY OF OPPOSITION

MCLP, an alleged creditor, alleges that it seeks to intervene to protect its interests in the assets of the James P. Driscoll estate. MCLP admits that it is seeking to "bring claims on behalf of the United States of America (the "United States") against Marika Tolz and

against the bond issued by Liberty . . . in favor of the estate of James P. Driscoll." Thus, MCLP admits that it seeks to bring claims owned by the Driscoll Estate, which is already represented adequately in this proceeding by Robert Furr, the duly appointed Chapter 7 Trustee for the Driscoll Estate. The law is clear that only the Chapter 7 trustee can bring claims that belong to the estate (absent extraordinary circumstances not present here). Further, despite the fact that the Driscoll adversary proceeding has been pending since October 18, 2010, MCLP has waited until the eve of mediation of this case before Judge Kimball (set for August 23, 2011), and after substantial efforts by counsel for the Trustee and counsel for Liberty to narrow the issues and resolve claims, to file the Motion to Intervene. MCLP's remedy as a creditor of the estate is to object to any settlement that may be reached between Liberty and the Driscoll estate when that motion to approve settlement is filed with the Court. The eleventh hour interjection of MCLP, with the myriad of convoluted claims that it seeks to raise, in the mediation will unnecessarily complicate and delay resolution of this matter, increasing expense to all parties. All that allowing MCLP's tardy intervention will do is delay and increase the costs of these proceedings, and interfere with the ability of the Successor Trustee and Liberty to reach a settlement at the settlement conference.

## BACKGROUND

On October 18, 2010, the United States commenced the Driscoll Adversary Proceeding against Successor Trustee Furr (the "Successor Trustee") seeking the return of $967,856.00 allegedly misappropriated by Marika Tolz from the U.S. Marshall's Service

2

and transferred to the Driscoll estate. (Driscoll Adversary Doc. 1). On November 4, 2010, Successor Trustee Furr answered the Complaint and filed a Third Party Demand against Liberty (under a bond issued by Liberty that named Ms. Tolz as one of the principals) and Ms. Tolz seeking damages resulting from Ms. Tolz' alleged wrongful acts as trustee for the Driscoll estate, namely the $967,856 claimed by the United States, lost interest on funds that were moved in and out of the estate by Ms. Tolz, and the Successor Trustee's attorney's fees. (Driscoll Adversary Doc. 10). Liberty filed an Answer to the Third Party Complaint on December 20, 2010 (Driscoll Adversary Proceeding Doc. 20). The Driscoll Adversary Proceeding was later consolidated by agreement of the parties into the captioned adversary proceeding for pre-trial purposes (with parties reserving their rights as to trial) (the "Consolidated Adversary Proceeding"). (Driscoll Adversary Docs. 107 and 122).

Contrary to MCLP's self-serving claim that the claims are in their "early stages," Liberty has conducted document discovery from both the United States and the Successor Trustee regarding the claims alleged by the Successor Trustee in the Driscoll Adversary Proceeding. Liberty also spent considerable time obtaining bank records from various banks implicated in the Driscoll Adversary, which included motion practice with Bank of America. (Driscoll Adversary Docs. 77-81, 101). Ms. Tolz' deposition was also taken in the Driscoll Adversary Proceeding (Driscoll Adversary Doc. 87), and the United States filed a motion for summary judgment (Driscoll Adversary Doc. 108).

3

Critically, significant negotiations proceeded between Liberty and the Successor Trustee, as well as the United States and successor trustees for other estates, regarding the exchange of information and documentation held by the United States Trustee's Office regarding Tolz alleged wrongdoing, specifically a Reconstruction Report. Liberty, the United States and the Successor Trustees also had significant discussions regarding a vehicle to amicably resolve the cases. These parties ultimately agreed to attend a settlement conference in front of Judge Kimball on August 23, 2011. On May 16, 2011, a Notice to Parties Participating in Judicial Settlement conference was filed in the Consolidated Adversary Proceeding (Doc. 86). At no time prior to its August 4, 2011 filing, discussed below, did MCLP notify Liberty that it intended to attempt to intervene in the case. A pretrial conference was previously set in the Driscoll Adversary Proceeding, but was continued by agreement of the parties until August 30, 2011 to conserve resources pending the outcome of the settlement conference. (Doc. 104 in the Driscoll Adversary).

Liberty has prepared for the settlement conference in good faith based on the claims asserted by the Successor Trustee on behalf of the Driscoll Estate. Prior to MCLP's last minute and meritless attempt to intervene, the Successor Trustee provided Liberty with a settlement demand, and Liberty has responded to that settlement demand.

Inexplicably, MCLP did not file its Motion to Intervene until August 4, 2011. In that eleventh hour filing, MCLP attaches a proposed Intervenor Complaint that raises only estate claims for return of: (1) amounts paid to settle the United States' claims; (2) amounts paid to estate professionals retained while Tolz was the trustee; and (3) Tolz' interim

4

compensation. While the pleading vaguely references malfeasance in connection with the Patrick Power estate, it provides no details and admits that Tolz was the Trustee of that estate for a mere six days. The Successor Trustee in Patrick Power, Kenneth Welt, has not alleged any claims and the Complaint does not allege any claims against Mr. Welt.

In a thinly veiled attempt to mask the lateness of its Motion, MCLP tries to assert that the Driscoll Adversary Proceeding was somehow recently referred to this Court. While the lead consolidated case was referred by the District Court by agreement of the parties, the Driscoll Adversary Proceeding was never stayed based on the interpleader. In fact, as noted above, document discovery, motion practice and the deposition of Ms. Tolz have been conducted. MCLP has been on notice of the Driscoll Adversary Proceeding since it was filed almost a year ago, and the Settlement Conference was noticed in May. MCLP offers absolutely no justification for waiting until the eve of the settlement conference to attempt to interject itself into proceeding where, thus far, it has sat back and allowed the Successor Trustee to prosecute the claims against the Bond. Critically, MCLP does not assert that the Successor Trustee has done anything improper in his handling of the Driscoll Adversary Proceeding. Lastly, MCLP seeks fees from Liberty that will surely duplicate fees sought by the Successor Trustee and will only increase the costs of this litigation.[1]

---

[1] Liberty does not concede that MCLP will be entitled to fees or any other relief, if permitted to Intervene. Liberty reserves, undiminished, all defenses to any claim alleged by MCLP.

5

## LAW AND ARGUMENT

### I. MCLP DOES NOT HAVE STANDING TO ASSERT ESTATE CLAIMS.

MCLP attaches a proposed Complaint that it intends to file if intervention is permitted. A review of that Complaint shows that MCLP seeks to assert claims that belong to the Driscoll Estate. The law is clear that, absent a motion and finding by the Court that the Trustee has not properly prosecuted claims, the Trustee is the only proper party to prosecute estate claims. The Eleventh Circuit has clearly held that "a trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the *only* party with standing to prosecute causes of action belonging to the estate." *Parker v. Wendy's International, Inc.*, 365 F.2d 1268, 1272 (11th Cir. 2004) [emphasis added]. In fact, "[o]nly a bankruptcy trustee has standing to assert causes of action that belong to the estate, and any similar lawsuits brought by individual creditors are subject to the automatic stay provision of § 362(a)(3)." *In re Xenerga, Inc.*, 449 B.R. 594, 598 (Bankr. M.D. Fla. 2011); *see also In re Kozich*, 406 B.R. 949, 954 (Bankr. S.D. Fla. 2009) ("if the cause of action is an asset of the estate, the trustee alone has standing to bring that claim.").

There is an exception to this rule, at least for duly constituted committees, where the trustee has failed to act **and** "the court, after the appropriate motion by the committee, has approved the filing of the lawsuit." *Matter of the Florida Group, Inc.*, 123 B.R. 923, 924 (Bankr. M.D. Fla. 1991); *see also In re Prime Motor Inss, Inc.*, 135 B.R. 917, 919 (Bankr. S.D. Fla. 1992). MCLP has not filed a motion alleging that the Successor Trustee has failed to act properly in its pursuit of claims on behalf of the Driscoll estate.

6

MCLP attempts to avoid the fact that it does not have standing by citing to *Loyd*, a non-bankruptcy case that did not require a government intervenor to demonstrate standing in order to intevene. MCLP ignores the automatic stay and case law holding that *only* the trustee can bring estate claims. To allow every creditor in a case to intervene in actions brought by the trustee would result in unwieldy, expensive and protracted litigation, and interfere with the trustee's ability to efficiently administer the estate. Further, MCLP does not simply seek to intervene – it seeks to assert claims related to other professional fees that have not been raised by the Successor Trustee (fees that were approved by the Court and as to which neither the Successor Trustee or MCLP have filed any motion to disgorge), and unspecified claims related to another estate for which Tolz was trustee for a mere 6 days. Even if the intervention were permitted, the Complaint would be subject to a motion to dismiss for lack of standing.

However, even if this Court finds that a creditor without standing may seek to intervene in a duly appointed trustee's action, despite the trustee's sole right to assert the claim, MCLP's interests, as a general unsecured creditor, are adequately represented by the Successor Trustee and intervention is still not appropriate.

II. **MCLP IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

   A. **MCLP'S INTERESTS ARE ADEQUATELY REPRESENTED BY THE TRUSTEE.**

As MCLP acknowledges, it is MCLP's burden to establish its interest is not adequately represented by the Successor Trustee. MCLP failed to acknowledge the cases

7

holding that "there is a well-settled presumption that 'when a representative party is a government body charged with representing the interests of proposed intervenors ...' it will do so adequately unless there is a 'showing of gross negligence.'" *Benjamin v. Department of Public Welfare of Cmwlth.*, 267 F.R.D. 456, 464 (M.D. Pa. 2010) (citing *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992). Another court has provided that "There is a presumption that if one party is a government entity charged by law with representing the interests of the applicant for intervention, then this representation will be adequate." *Brody By and Through Sugzdinis v. Spang*, 957 F.2d at 1123 citing *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982).

Here, the private trustee system for Chapter 7 cases was established by Congress. 28 U.S.C. § 586(a) provides: "Each United States trustee, within the region for which such United States trustee is appointed, shall - (1) establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11." Further, the United States Trustee himself is a named party to the Consolidated Adversary Proceeding. Lastly, as noted above, the Successor Trustee has the sole right to pursue estate claims; therefore, it must be presumed that the Successor Trustee adequately represents the interests of the estate, and therefore MCLP's interest as an unsecured creditor, absent a showing to the contrary.

MCLP fails to address the fact that the Successor Trustee is charged with marshaling the assets of the estate. Under 11 U.S.C. § 704, the trustee shall "collect and

8

reduce to money the property of the estate for which the trustee serves, and close such estate as expeditiously as is compatible with the best interest of the parties in interest." Thus, by extension, if MCLP claims that it has a right to intervene, or should be allowed to permissibly intervene, it is in essence claiming that the successor trustee is not performing his statutorily required duty to adequately represent MCLP's interest. MCLP did not state this in its motion, or make any showing whatsoever that the Successor Trustee is not adequately representing the estate.

Here, MCLP has failed to overcome the presumption that the Successor Trustee, charged by federal statute with representing MCLP's alleged interest in collecting estate property, is not adequately representing its interest. MCLP has not even alleged that the Successor Trustee has been negligent or derelict in any way in pursuing estate claims. Rather, MCLP simply claims that "The proposed intervenor's burden to show their interest *may be* inadequately represented is minimal" without even making a minimal showing. *Federal Sav. And Loan Ins. Corp. v. Falls Chase Special Taxing District*, 983 F.2d 211, 216 (11th Cir. 1993) (emphasis in original). As *Brody By and Through Sugzdinis v. Spang* acknowledged, although the burden is minimal, it "is on the applicant for intervention to show that his interests are not adequately represented by the existing parties." 957 F.2d at 1123. The court added that

> Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion

9

>between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit.

*Id.* (citations omitted). MCLP has not, and cannot, make any such a showing.

A Southern District of Florida case further clarifies MCLP's burden. *E.E.O.C. v. Eastern Air Lines, Inc.*, 97 F.R.D. 646 (S.D. Fla. 1983). In *E.E.O.C.*, the Court cited the same Supreme Court case cited in MCLP's motion, *Trbovich*, and found that the *Trbovich* Court's statement that the intervenor had a "minimal" burden in showing his interest may be represented inadequately, was dictum. *Id.* at 650. ("In dictum the Court [in *Trbovich*] noted the applicant for intervention has a minimal burden in showing that his interest may be inadequate."). In a footnote, the Southern District of Florida elaborated on its position, and on the actual standard that applies to entities such as MCLP in their attempts to intervene:

>In *Pierson v. United States*, 71 F.R.D. 75, 78 n. 5 (D.Del.1976) the court stated: Applicants urge that their burden in this context is a minimal one, relying upon dictum in *Trbovich v. UMW*, supra. However, that dictum cannot be considered controlling in the instant case. *Trbovich* involved an intervention motion by a party whose interests in the underlying litigation were inconsistent with the existing party purportedly representing his interest. In such cases, the policies served by intervention are promoted by utilization of a reduced burden on the issue of inadequate representation. Cf. 7A Wright and Miller, Federal Practice and Procedure § 1909 at 521-524. Thus *Trbovich* is distinguishable from the instant case where the interest of the applicant and existing plaintiff are precisely identical. In such cases, courts have utilized various tests which place a fairly stringent burden upon those seeking intervention. *See, e.g. Stadin v. Union Electric Co.*, 309 F.2d 912 (8th Cir.1962), cert. denied 373 U.S. 915, 83

10

> S.Ct. 1298, 10 L.Ed.2d 415 (1963); *U.S. v. IBM* [62 F.R.D. 530 (S.D.N.Y.1974) ], supra at 536.
>
> Alternatively, if the *Trbovich* dictum does apply, see *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501 at 505 (1976), the Court holds that ITT has not met even a minimal burden because of its failure to elucidate any facts that demonstrate its interests are inadequately represented.
>
> We find the charging parties' interests are identical to EEOC's interest. Moreover, even if it be said the interests diverge to some degree the charging parties have not demonstrated facts establishing this interest is inadequately represented. Thus, the "minimal burden" on intervention enunciated in *Trbovich* is not the legal standard here; alternatively, even if it were, the failure to adduce evidence on this point renders the argument futile.

*Id.* at FN8.

MCLP cites *Golden Glades* for its position that it has satisfied the purported "minimal burden," though it offers no facts or evidence that its interests are not adequately represented by the Successor Trustee. However, the plaintiff (a disbursing agent) and creditor (an insurer) did not have identical interests in *Golden Glades*, like here. Further, *Golden Glades* was a Chapter 11 case and relied heavily on 11 U.S.C. §1109, which does not apply here, and the decision does not reference any objection to the motion.

Thus, as the Southern District has provided, when the interests of the intervenor and existing plaintiff are identical, as is the case with MCLP and the successor trustee, there is a "fairly stringent burden upon those seeking intervention." Regardless, as the Court noted, MCLP here, just like the proposed intervenor in *E.E.O.C.*, failed to provide any facts that demonstrate its interests are inadequately represented. Consequently, this Court

11

should likewise hold that the alleged "minimal burden" standard on intervention provided for in *Trbovich* is not the legal standard here, and even if it were, MCLP's failure to provide any evidence that its interests are inadequately represented renders the argument futile. *See also Wollschlaeger v. Scott*, 2011 WL 2672250 (S.D. Fla. 2011) ( "I need not address the first three requirements [of intervention] because I find that the [intervenor] has failed to show that the existing [litigants] will not represent its interests adequately").

As the foregoing case law and analysis provides, MCLP's motion to intervene should be denied in its entirety.

### B. MCLP'S MOTION, MADE TEN MONTHS AFTER THE FILING OF THE ADVERSARY PROCEEDING AND ON THE EVE OF THE SETTLEMENT CONFERENCE, IS NOT TIMELY.

"[T]imeliness is a question addressed to the sound discretion of the trial court." *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970). In *Diaz*, the court noted that "the more important question is not the mere length of time but the possibility of prejudice to existing parties that the delay may cause." *Id.* at 1126.

The ten month delay in filing the Motion to Intervene, coupled with the timing of the Motion after discovery by Liberty of the issues raised in the Successor Trustee's complaint and significant work by Liberty and the Successor Trustee, as well as the United States, toward narrowing the issues and amicable resolution, renders the Motion untimely and prejudicial to Liberty. The timing of the Motion, on the eve of a global settlement conference noticed back in May, adds to the clear prejudice to the existing parties.

In a similar case, *In re Donovan*, 411 B.R. 756, 765-766 (Bkrtcy. S.D. Fla. 2009),

12

the Court denied a motion to intervene filed approximately nine months "after [the proposed intervenor] learned of its interest in the Defendant's case." Id. at 765. The Court noted that the Eleventh Circuit has articulated the following four factors that a court must consider when assessing the timeliness of a motion for permissive intervention: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that application is timely. The Court held that a nine month delay in seeking to intervene was too long; that the delay that would be caused by the addition of new claims or additional discovery would be prejudicial to the parties where the case had been pending for nine months and scheduled for pretrial in May of 2009 even though the motion to intervene was filed in November of 2008; and there was no prejudice to the movant by denying the motion since the movant's interest were adequately protected in the existing suit. *Id.*, at 765-66.

Here, MCLP waited some ten months after the Driscoll Adversary Proceeding was filed; the case will be delayed if a new party is permitted to inject new issues in the case and interfere with settlement negotiations; and a pretrial is set for August 30, 2011. As in the *Donovan* matter, this motion comes too late.

13

### III. PERMISSIVE INTERVENTION SHOULD ALSO BE DENIED.

Permissive intervention should also be denied because the Motion is untimely, the intervention will unduly prejudice and delay this action, and MCLP's interests are adequately represented by the Successor Trustee, all as set forth above. As the Southern District of Florida has held, even with respect to permissive intervention, "duplicative nature of the [intervenor's] claims or interests will unduly delay the adjudication of the rights of the parties to this lawsuit and unlikely shed any new light on the ... issues in this case." *Wollschlaeger v. Scott*, 2011 WL 2672250 at * 3 (S.D. Fla. 2011). Thus, the Court held that the intervenor failed to meet the requirements of permissive intervention and denied the motion. *See also Benjamin v. Department of Public Welfare of Cmwlth.*, 267 F.R.D. 456, 465 (M.D. Pa. 2010) (if the interests of the proposed intervenors are already represented in the litigation, courts typically deny such applications to intervene); *Hoots v. Com. of Pa.*, 672 F.2d 1133 (3d Cir. 1982).

### CONCLUSION

MCLP's interests are adequately represented by the Successor Trustee, and MCLP does not have standing to intervene in this lawsuit. Further, MCLP has waited too long to file its Motion to Intervene, and it should be denied as untimely. MCLP is adequately protected by its ability to file an objection to any settlement reached between the Successor Trustee and Liberty.

WHEREFORE, Liberty prays that this Court deny Miami Center Limited Partnership's Motion to Intervene, and grant to Liberty all other legal and equitable relief.

Respectfully submitted,

/s/ Alberta L. Adams
BRETT D. DIVERS
Florida Bar No. 0973246
bdivers@mpdlegal.com
ALBERTA L. ADAMS
Florida Bar No. 0080063
aadams@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 2010
Tampa, FL 33602
(813) 229-3500 (Telephone)
(813) 229-3502 (Fax)
*Attorneys for Liberty Mutual Insurance Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by CM/ECF on August 15, 2011 to those parties authorized to receive electronic service and/or via US Mail to those persons to whom electronic notification will not be delivered.

/s/ Alberta L. Adams